Smith *vs.* Turnley.

JOHN D. SMITH *et al.*, plaintiffs in error, *vs.* P. L. TURNLEY, administrator, defendant in error.

A Justice of the Peace may issue a distress-warrant for more than he can entertain a suit for.  (R.)

Where a party levied a distress-warrant on property consisting of a lot of drugs, which had been exempted by the Ordinary under the law of personalty exemption, and it appeared the drugs exempted had been mixed with other drugs bought by the parties :

*Held*, That the privilege of exemption extends only to the articles exempted by the Ordinary, and they must be identified to release them from levy, and a lot of drugs in a store, mixed with other drugs, are liable to levy and sale, except as to such parts or articles as may be specifically claimed and identified.

*Held, again*, That when a party sublets to another under a contract that the sublessee is to pay the rent due, this is not such a claim for rent by the landlord as may be enforced against the sublessee by levy of a distress-warrant.

*Held, again*, That the verdict of the jury in this case exceeded the amount proved to be due for rent, and we direct that the plaintiff write off the excess of the verdict over the rent due for the actual occupancy, or in default thereof that a new trial be granted.

Jurisdiction of Justice of the Peace.  Homestead and Exemption.  Before Judge HARVEY.  Floyd Superior Court. January, 1871.

Hamilton & Turnley were partners as druggists, in Rome, Georgia.  In September, 1868, Turnley sold his interest in the business to Hamilton, upon certain terms specified in writing, one of which was that Hamilton would pay Turnley rent from the 1st of March, 1868, to the 1st of January, 1870, at $50 00 per month.  Subsequently, in May, 1869, Smith bought out Hamilton, and agreed, not only to pay Turnley the rent accruing, but that which Hamilton then owed Turnley.  Turnley was no party to this agreement, and still looked to Hamilton for his rent.  The Ordinary set apart (when, does not appear,) to Smith, as exempt from his debts, for the use of Smith and his children, "one stock of merchandize, consisting of drugs, medicines, etc., specie value, $600 00;

one horse and buggy, specie value, $225 00." Then Smith sold the horse and buggy, and with the proceeds bought other drugs and medicines, and put these with the exempted lot of drugs and medicines and "a large lot of other drugs and medicines." It is said that this was done in February, 1869. On the 15th of November, 1869, Smith's wife bought his interest in said stock and kept them in said store till the 29th of March, 1870.

On this last day, Turnley was advised that he could proceed against Smith and his wife severally for rent. Thereupon, he sued out a distress-warrant against Mrs. Smith for $250 00, and another against Smith for $1,250 00. The affidavits were made before a Justice of the Peace, and he issued the warrants. The warrants were levied upon the drugs and medicines then in the store, worth $200 00. Smith claimed them as trustee for his wife and children, under said exemption. The cases were tried together by consent. On the trial the foregoing facts were proved.

Pending the trial, Smith's counsel objected to the warrants as void, contending that a Justice of the Peace could not issue a distress-warrant for more than $100 00. The objection was overruled. They also objected to the contract between Hamilton and Turnley as irrelevant, but the Court overruled that objection also. The Court charged the jury as follows : "When a tenant sublets, the subtenant is the tenant of the original landlord and will be liable to him for the rent for the time he permits him to remain, in case no one else pays it; but the landlord, in such case, may agree to look to the first tenant alone, and if so, he could not go on the subtenant; and the same would be true if the premises be sublet again by the first subtenant." He was requested to charge that, if Smith "put the personalty exempt by the schedule, as drugs, in the drug store, and there are more drugs levied on than were put there," the jury should find for claimant. The Court refused so to charge, but charged as follows : "Any kind of personal property may be set aside under the Home-

Smith *vs.* Turnley.

stead Act, except money, and the same cannot be levied on and sold for debt. But those who claim it as exempt must be able to show, in some way, that it is the property that was so set apart, to the satisfaction of the jury. If a stock of drugs, it would be sufficient that the whole stock had been so set apart without itemizing, provided no more has been added to the stock since it was set apart. But if the stock so set apart has been, by those who claim it, so mixed with other drugs, which were not in the exemption, as that the exempted articles cannot be ascertained and identified, the rights of creditors would not be thereby defeated from seizing the property which is liable to their debts. Let justice be done, however, to all parties as far as can be."

The jury found that $1,250 00 was due Turnley for rent, of which Smith owed $1,000 00 and his wife $250 00, and that the property was subject to the warrants.

Claimant's counsel moved for a new trial upon the grounds that the said verdict was wrong, and that the Court erred in overruling said objections and charging as he did, and refusing to charge as requested. A new trial was refused, and error is assigned on each of said grounds.

WILLIAM D. ELAM, by E. N. BROYLES, for plaintiff in error.

UNDERWOOD & ROWELL, for defendant. Justice can issue distress-warrant for over $100 00: 15 Ga. R., ...; 38th, 262. The description in schedule was too general: 40 Ga. R., 485. No sufficient identification of the goods levied on as having been bought with proceeds of exempt property: Winslow's (N. C.) R., 288 ; 25 U. S. Dig., 235 ; 21st, 247 ; 24th, 267.

LOCHRANE, Chief Justice.

The record in this case discloses a confusion of facts out of which it has been difficult to ascertain the merits. It

appears that Turnley, as administrator of B. H. Lampkin, deceased, made out two affidavits for rent against the plaintiffs in error, upon which distress-warrants issued, and were levied upon a stock of drugs. The property levied upon was claimed by Amelia Smith and J. D. Smith, under the homestead and exemption laws, and the affidavit of J. D. Smith alleges that certain personal property was set apart by the Ordinary of Clay county, among which was one stock of merchandise consisting of drugs and medicines, amounting to $600 00. And all the property claimed was purchased with the proceeds of the property set apart. The two warrants levied were one for $250 00 for rent due by Mrs. Amelia Smith, and one for $1,250 00 for rent due by John D. Smith. The affidavits upon which these warrants are predicated fail to set out for what time or term the amounts claimed are due. It was agreed upon the trial to submit both cases together, and upon the proof the jury found for the plaintiff, and that the property was subject, when counsel for the Smiths moved for a new trial growing out of alleged errors committed by the Court.

By the evidence, it appears that Turnley and one Hamilton, on the 28th of September, 1868, entered into a written agreement, by which Hamilton bought from Turnley his stock of medicine, etc., and agreed to pay him, as administrator of Lampkin, the rent due, and falling due up to the 1st January, 1870, at $50 00 per month. When J. D. Smith bought out Hamilton, Turnley swears that he promised to pay the rent due by Hamilton upon this contract. The purchase by Smith from Hamilton was in May, 1869, and he was to pay $1,700 00, which Smith swears included the rent due up to the expiration of Hamilton's lease or 1st January, 1870. The testimony conflicts upon this question of liability and promise to pay the rent due by Hamilton upon the part of J. D. Smith, and the certified copy of the personalty exemption were also in evidence. We have extracted these facts out of the bill of exceptions, and proceed to dispose of the legal questions made.

1. The right of a Justice of the Peace to issue a distress-warrant for an amount beyond his ordinary civil jurisdiction, is clear and unquestionable, and when levied by the proper officer and returned to the proper Court, the warrant is legally binding upon all parties. And it was not error in the Court below to so hold in this case.

2. It was not error in the Court to admit the written evidence or agreement, though entered into between Turnley and Hamilton. It was a lease for the premises in dispute, covering a part of the term they were occupied by Smith. Though *res inter alios*, yet, when Smith came into possession as a sub-tenant, it was some evidence to show the amount of rent due by the tenant, and was the foundation for laying the ground of liability against Smith for his occupancy, so far as that fact was involved in the issue. Again, the sub-tenant is the tenant of the landlord for the time he actually occupies the premises; the relation of landlord and tenant exists and may arise out of sub-letting the premises for the time the landlord permits the sub-tenant to remain. But the agreement by the sub-tenant to pay rent due before he entered upon the premises, does not constitute a *debt for rent* as against him that will authorize a distress to levy and summarily enforce the collection by the landlord. This is practically an important question, and in the case of *Scruggs vs. Gibson et al.*, 40 Georgia, 519, this Court has laid down the principle, that to authorize a levy by distress-warrant for rent, " the relation of landlord and tenant must have existed during the period for which the rent is claimed." How far the agreement of A with B, to pay the rent due by B at the time of the agreement, may be enforced as a debt for rent due, by the landlord, by distress upon the property of A, is a question I have been unable to meet decided either way by our Courts, and I follow only the justice and judgment I entertain of the provisions of our Code upon the subject. In other States I find the principle recognized that the assignees of a lease or sub-tenant are liable upon their pos-

session, and not for back rents due to the landlord. And distress-warrants, in the case at bar, we hold, could not be issued and levied for rent due by Hamilton upon the proof of a promise to pay by Smith, his sub-tenant, such rent to him.

3. In the matter of error alleged in relation to the charge of the Court upon the subject of "exemption" we think the Court charged the law correctly. To assert the protection of the law in cases of personalty exemption, there must be a distinct identification of the property exempt. To exempt a stock of drugs and then mix such articles with others of a like kind, and, in the confusion, lose all identity of the articles exempt, is not the intention of the law. It would be manifestly unjust to so hold, and such property is liable to levy and sale. And the articles exempted must be specifically claimed and identified to invoke the protection of exemption by the Ordinary.

4. Upon the whole evidence and facts in this case, we find that the parties, plaintiffs in error, occupied the premises from the 28th May, 1869, until the 29th March, 1870, which at the price, $50 00 per month, amounts to $500 00, of which time Mr. Smith occupied some five months, or $250 00, and we direct that the plaintiff write off from the verdict in this case, the amount in excess of the sum due for the rent during the actual occupancy of the parties, or in default, that a new trial be granted.