## WADE *vs.* WESLOW & CO.

[This case was argued at the last term and decision reserved.]

1. Investments of income go to enlarge the corpus of the estate which produced it. Thus, where a debtor had set apart to him a homestead, the realty valued at fifteen hundred dollars, and the personalty at one thousand dollars, and, with the proceeds of cotton afterwards grown on the realty and of hauling done with animals embraced in the personalty, he purchased one hundred and fifty

sheep, and put them on the premises, these sheep were not subject to be seized and sold under an ordinary judgment outstanding against him, the homestead estate not yet having terminated.

2. The matters of fact being left somewhat doubtful by the evidence, and the court having erred in its charge to the jury on a material point, a new trial should be had.

Homestead. Income. Charge of Court. New trial. Before Judge TOMPKINS. Pierce Superior Court. March Term, 1878.

This case arose upon the levy of an execution in favor of Weslow & Co. against Wade, as surviving partner of S. H. Wade & Co., upon one hundred and fifty sheep, and a claim filed thereto by Wade upon the ground that such sheep constituted a part of his exemption under the homestead law. The jury found the property subject. A motion for a new trial was made by claimant, which was overruled by the court in the following judgment :

" The sole question in this case was this : whether, after a homestead had been set apart for the full amount of the personalty—and in this case the record shows over $1,000.00 as set apart—if an additional amount of personalty could be exempted from levy and sale under such homestead, which property appeared to have been purchased with money acquired to the claimant—and the head of the family in homestead—by the use of the homestead property regularly set apart. The court held that §2026 of the Code did not include property over and above the amount set apart under the homestead, purchased with the proceeds of the cultivation and labor of the homestead, when such proceeds were first turned into money." The charge to the jury conformed to this holding.

To this judgment claimant excepted.

JOHN C. NICHOLS; G. J. HOLTON, for plaintiff in error.

SIMON W. HITCH, for defendants.

BLECKLEY, Justice.

1. Assuming that the sheep levied upon were purchased and paid for with the proceeds of cotton grown on the realty after it was set apart as a homestead, and of hauling done by the debtor with animals embraced in the exempt personalty, (as a portion of the evidence in the record indicates, though other portions of it strongly tend to negative any such conclusion) the question is, do these sheep constitute a part of the homestead property, or are they out of the protection of the homestead and exemption laws, and subject to an ordinary judgment against the debtor? According to the constitution of 1868, (Code, §5135), both realty and personalty are to be valued at the time they are set apart, and there is no intimation that if the value afterwards changes, any deficiency is to be made up, or any excess is to be pruned off. It is not the policy of the constitution to maintain permanently an estate in realty worth two thousand dollars, and an estate in personalty worth one thousand, but to allow these values as a maximum to start with, and leave families to the hazard of depreciation or loss, and to the chances of appreciation or gain. The property of both kinds is valued once for all, and no subsequent valuation is contemplated. And from the time it is set apart, the constitution dedicates it "to the sole use and benefit" of the family. Neither the debtor nor his ordinary creditors are to have any rights in it, or powers over it, inconsistent with the enjoyment by the family of this use and benefit. One of the uses of land is to produce crops : and to enjoy the use of land is to take the crops, while they remain in specie, and their proceeds, after they are converted by sale or exchange into other property. The use of animals fit for labor, is in the labor, or what it produces, or that into which such produce is converted. As to the labor of the debtor himself, that is subject to his own will. If he employs it on the homestead land, or in connection with the exempt personalty, what it produces inures to the family ; but if he employs it sepa-

rately from these, its produce is subject to his debts. We cannot suppose that in making provision for families, the constitution intended that the head of a family should not be allowed to cultivate the farm or haul with the animals, without subjecting the proceeds, or a part of them, to seizure by his creditors. In many instances, perhaps in most instances, vain indeed would be the homestead and exemption, if the labor and management of the head of the family were not added to make the property productive. If by industry, economy and thrift, a surplus is produced, over and above what is consumed by the family, and this surplus is invested, the investment, we think, goes to enlarge the corpus, just as it would do in the case of an ordinary trust estate. There is a public policy in encouraging families to save, and in not pressing them with motives to spend or waste all their income. To stimulate production and discourage extravagant living, is for the best interest of the state. In average human nature, there is a deep seated antagonism on the part of debtors, and often on the part of their families, towards creditors who press for payment; and if the surplus income from homesteads, whether before or after investment, was exposed to seizure by those very creditors to baffle whom, perhaps, the homestead right was asserted, the practical effect would be, surplus income from such estates would soon become very scarce. None would be produced, or if produced, the scale of consumption would be varied so as to absorb and exhaust it. The right to seize would thus prove barren to creditors, and the wealth of the state receive no accession from the millions of capital locked up in homesteads. Both policy and principle are with the rule as we lay it down, and we know of no precedent against it. Of course, after the termination of the homestead estate, whatever remains, either of original corpus or of the accumulations, will be accessible to creditors.

2. The evidence was such as to authorize the verdict notwithstanding the error of the court in charging the jury, but not such as to constrain it. With correct instructions,

the finding might have been different, inasmuch as it is not clear under the evidence, without settling the credibility of the conflicting witnesses, whether the sheep were purchased and paid for as the debtor contends, or whether he merely reclaimed them after having sold them to a purchaser who died without paying for them. There had best be a new trial.

Judgment reversed.