LATHROP & COMPANY *vs.* McBURNEY & HOLLINGSWORTH *et al.*

A bill alleged as follows: Common law suits were instituted against certain defendants. During their pendency, the principal defendant left the state. Attachments *pendente lite* were sued out, and served both by levy and garnishment. A large amount of property in this state is held by the above-stated defendant as trustee for his wife and children. From time to time, both before and s nce the creation of the debt to complainants, the defendant has mingled his individual funds with the trust estate, in such manner that it is not easy to separate the two funds. Since the commencement of the common law suits and attachments, he has caused shares of stock, of which he was the owner, to be transferred to the trust estate. All of this has been done with a fraudulent intent to defeat the claims of complainants. Apart from this, the defendant is insolvent, owning no property that is not so incumbered. The common law judgments have so far proved fruitless. The bill is filed in aid of them, to ascertain the defendant's interest in the property, remove the cloud that overhangs the title, and bring it to sale for the payment of his debts, disencumbered, so that it may bring something like its fair value:

*Held*, that there was equity in the bill.

(*a.*) Courts will favor the rights of creditors, and afford them every remedy and facility to detect, defeat and annul any effort to defraud them of their just rights.

October 23, 1883.

Debtor and Creditor. Equity. Fraud. Before Judge CARSWELL. Bibb Superior Court. April Term, 1883

Reported in the decision.

LYON & GRESHAM; W. DESSAU; THOMAS WILLINGHAM, for plaintiff in error.

L. N. WHITTLE; LANIER & ANDERSON, by brief, for defendants.

HALL, Justice.

The complainants in the bill, having large claims against the defendants, instituted common·law suits to enforce their collection. Pending this suit, McBurney, the principal defendant, left the state, and attachments *pendente lite* were sued out against him, and served both by levy and garnishment. It seems that a large amount of property in Macon is held by him as trustee for his wife and children; that from time to time, since the creation of complainants' debt, as well as before, he has mingled his individual funds with this trust estate in such a manner that it is not easy to distinguish or separate the two funds; that he, even since the commencement of complainants' common-law suits and attachments, has caused a number of shares of the stock of the Planters' Warehouse Company, of which he was the owner, to be transferred to this trust estate, etc.; that all of this is done with a fraudulent intent to defeat the claims of complainants; that their remedy at law is utterly inadequate to reach his property and bring it to sale; that, apart from this, McBurney is insolvent, owning and controlling no property that is not so encumbered. The bill is brought in aid of the suits at common law, which· have now gone into judgment, and which so far have yielded nothing but an abundance of vexatious and fruitless litigation; to ascertain Burney's interest in the property, remove the cloud that overhangs the title, and bring it to sale for the payment of his debts, disencumbered, so that it may bring something like its fair value. On the hearing of this case, the court below, on motion, dismissed the bill for want of equity.

Should this decree have been made? If an early decision of this court—*Thurmond et al. vs. Reese*, 3 *Kelly*, 449—be law, and we think it is, then it was erroneous. In their main features, these cases are strikingly alike. In that case, Lumpkin, J., who delivered the opinion of the court, after noticing the rule that, before a creditor can

come into a court of equity to subject the equitable estate of his debtor to the payment of his demand, he should have pursued his legal remedies to every available extent, without being able to obtain satisfaction, said : "But this is not the case made by the bill ; it is filed to set aside fraudulent conveyances, made for the express purpose of defeating complainant's debt, and to annul a sale in which the property of the debtor was sacrificed by the improper use of these covinous instruments. The bill makes a clear case of actual fraud, and a strong case. A court of equity has, therefore, jurisdiction in remedying the fraud, and " the complainant in the bill comes before it, neither appealing to its favor or discretion, but demanding relief *ex debito justitiæ.* ·

The case of the Planters' & Mechanics' Bank *vs.* Walker *et al.,* 7 Ala., 946, is precisely parallel in principle ; and the court there say that it is a misnomer to consider and call the thing in controversy the equitable estate of the debtors, for, being *in pari delicto* with those who claim under them, chancery would not entertain a bill in their favor, but leave them to adjust as they could the rights they set up, without lending its aid. " But the right of the creditor to subject property of his debtor, fraudulently conveyed, is founded in that principle of the common law which enjoins integrity as a virtue paramount to generosity, and denounces fraud as incompatible with honesty and fair dealing."

No doubt the creditor here, as in the case cited, could re-levy his execution, and attack those conveyances at law, but the court of our sister state assigns a very satisfactory reason why equity should retain its concurrent jurisdiction over this subject.

" The right," says Chief Justice Collier, " to disembarrass the title before the property is sold to satisfy the judgment, is valuable to the creditor ; if he were compelled to sell it under execution, encumbered with a conveyance or lien supposed to be fraudulent, comparatively few would be

inclined to purchase, and they at a depreciated price. This consideration, apart from all others, is a potent argument in favor of the jurisdiction of equity."

By our Code, §1945, courts are enjoined to favor the rights of creditors, and to afford them every remedy and facility "to detect, defeat and annul any effort to defraud them of their just rights."

Of late years this just provision of the law has been so seldom appealed to that it seems to have been ignored, if not quite forgotten. It is quite time to revive a recollection of it, to put it in operation again, and to extend its innumerable benefits, when fairly and vigorously administered, to our people.

Judgment reversed.