KUPFERMAN vs. BUCKHOLTS.

Where the head of a family had an exemption set apart to him under §2040 of the Code, and subsequently rented land and used the property so exempted in making a crop, the crop thus made, after paying the rent, would not be subject to the prior debts of the head of the family, although there may have been an increase in the amount of such crop over the amount of the exemption used in making it, and although the debtor may have worked and managed for his family in making such increase.

(b.) It is not decided that, if the head of a family has property in his own individual right, whether real or personal, wherewith, in con-

junction with that exempted, he makes increase in the shape of other property, justice and equity might not require that a portion thereof should go to his creditors.

November 11, 1884.

Homestead. Debtor and Creditor. Before Judge Sim-
mons. Houston Superior Court. April Term, 1884.

A *fi. fa.* in favor of William Kupferman against Joseph Buckholts was levied on one mule, 2,000 pounds of fodder, 200 bushels of corn, 400 bushels of cotton seed and one bale of cotton. Buckholts, as head of a family, interposed a claim thereto, alleging that it was exempted property. Plaintiff tendered issue, alleging that the property levied on was made on land rented in 1883 by defendant, and that, if any part of the homestead property was used in making the crops levied on, claimant was entitled to only a proportionate part thereof. Issue was joined, and the case was submitted to the judge without a jury, on the following agreed statement of facts:

The crops levied on were made in 1883 on land rented from T. J. Cater by defendant, by his own and hired labor and the use of two mules; one of these defendant had previously purchased from Cater, paid part of the purchase money and still owed the remainder, and Cater held title until all was paid. On February 1, 1883, defendant took out an exemption on certain corn, fodder, one mule and other things. The mule exempted was sold on the next day by a creditor holding a mortgage containing a waiver of homestead and exemption. The corn and fodder exempted were used by the defendant in supporting his family and making a crop. In addition to the property levied on, defendant made in his crop twelve bales of cotton, which he had paid out for supplies advanced, mule hire and rent. The plaintiff claimed the excess in quantity and value of property over that exempted and used in making the crop.

The judge held the property not subject.

Plaintiff excepted.

B. M. DAVIS, for plaintiff in error.

DUNCAN & MILLER, for defendant.

JACKSON. Chief Justice

In the case of *Wade vs. Weslow & Co.*, 62 *Ga.*, 562, it was held that the sheep purchased with the proceeds of cotton raised on a homestead were exempt from levy and sale. There the court say: "We cannot suppose that in making provision for families, the constitution intended that the head of a family should not be allowed to cultivate the farm or haul with the animals without subjecting the proceeds, or a part of them, to seizure by his creditors. In many instances, perhaps in most instances, vain indeed would be the homestead and exemption, if the labor and management of the head of the family were not added to make the property productive. If by industry, economy and thrift a surplus is produced over and above what is consumed by the family, and this surplus is invested, the investment, we think, goes to enlarge the corpus, just as it would do in the case of an ordinary trust estate." And the learned judge delivering the opinion goes on to argue how useless would be the provision for a family, unless such was the meaning of the constitution, and how the policy of the state would be thwarted, unless this construction were put upon the homestead and exemption laws. It seems to us that the argument becomes stronger in a case like this now before us, where the exemption is, under section 2040 of the Code, very inadequate at best, and hardly the full amount in this case which that old exemption act allowed of personalty with no realty at all. Surely the principle should not be applied with less liberality where, as in the case at bar, the family had no land at all, and its head operated upon rented land.

So in 63 *Ga.*, 378, *Johnson vs. Franklin & Whitney*, it was held that, where farm products were set apart as an

exemption, and used in the support of the family, and in making the next year's crop, the crop so made would be exempt, especially if not greater than the original exemption.    The principle ruled in these two cases, applied to this, controls it.    Here what was left to make the next crop, after paying for the rent of the land and the support of the family, was scarcely, if at all, more than the original exemption; and if more, the spirit, and indeed the very words, of the case from 62 *Ga.* would cover this case.    A little exemption, like this, should it enlarge into an improved means of livelihood, may all, as the fruit of what was set apart, be well held not liable to seizure to pay old debts; and as the agreed state of facts, while something is in it about the head of the family working another mule besides the one exempted, purchased from his landlord and not fully paid for, and much stress is laid on the labor of the head of the household himself, fails to show clearly error in the conclusion reached by Judge Simmons, and as no motion is made for a new trial, and it is the burden of the plaintiff in error to show error, we decline to interfere with the judgment of Judge Simmons on law and facts.

We do not say that, if the head of a family has property of his own individual right—either land or personalty—wherewith, in conjunction with that exempted, he makes increase in the shape of other property, justice and equity would not require that a portion thereof should go to his creditors; but where, as in this case, the head of the family works and manages for his wife and children a small exemption, so as to enlarge it, and hires or buys a mule or other means, to be paid for out of what that exemption makes, supplemented by his own labor and management, we do say that the increase is, to all intents and purposes—in all reason and sense, under the policy of the laws of homestead and exemption—the property of the family, while the family is unbroken, and only the reversion after the family's extinction, is the individual estate of the head, and subject then to his debts.

And this view, we think, reconciles the cases cited above with the principle ruled in 44 *Ga.*, 243, which decides the principle laid down in the first paragraph above.

Judgment affirmed.