King vs. Skellie.

KING vs. SKELLIE.

1. Where, subsequently to the taking of an exemption of personalty by a debtor, he acquired a life interest in certain real estate under a will, and on the land so acquired a crop was made by tenants to whom it was rented, and for that purpose they used horses, mules, wagons, etc., together with provisions and supplies belonging to the exempted estate, and part of the crop delivered to the debtor as his share was levied on, and the debtor interposed a claim thereto on the ground that it was the proceeds of the exemption for his wife and children, naming them severally, and the judgment creditor tendered an equitable issue for the purpose of subjecting that portion of the crop which equitably belonged to the debtor: the claimant represented his wife and children, and they were thereby regularly made parties to the suit.

2. Where the debtor was both the executor of the will and the devisee of a life estate with remainder over, and he took charge of the land and rented it and received a portion of a crop made thereon some ten years after he came into possession of it, and it appeared that he assented directly to the bequest of those who were to take in remainder, there was sufficient evidence to authorize a jury in finding that he had assented to the bequest to himself.

3. Where a debtor rented certain land to tenants, who used personal property forming part of an exemption previously taken by such debtor in making a crop, all that a judgment creditor could subject of that portion of the crop received by the debtor was the value of the rent of the land on which the crop was made; and in order to

do so, it was necessary that there should be some evidence as to this value. In the absence of such evidence, it was error to submit to the jury the question as to what would be an equitable division between him as head of a family and himself as an individual, "taking into consideration the worth of the mules, the per cent. on the corn, cotton-seed, and everything of that sort."

(*a*) The principles announced in the cases of *Lathrop & Co. vs. McBurney & Hollingsworth et al.*, 71 *Ga.* 815, and *Oliver & Co. et al. vs. Victor & Co. et al.*, 74 *Ga.* 543, do not apply to this case.

BLECKLEY, C. J., concurring.

April 28, 1887.

Homestead and Exemptions. Parties. Administrators and Executors. Levy and Sale. Debtor and Creditor. Partnership. Before Judge SIMMONS. Houston Superior Court. October Term, 1886.

Reported in the decision.

DUNCAN & MILLER, for plaintiff in error.

HARDEMAN & DAVIS, for defendant.

HALL, Justice.

Skellie obtained, in 1882, a judgment against King, on which an execution issued. King as head of a family took an exemption of personalty in January, 1875. Subsequently to that time, September 30, 1875, Mrs. Louisa King, the mother of the defendant in this execution, died, leaving a will. She gave to the defendant a life estate in all her property, both real and personal, with remainder to his children. The property thus bequeathed to the defendant was acquired subsequent to the exemption set apart to the family, and of course did not go into it.

A crop was made on this land in which Mr. King had a life interest, by tenants to whom it was rented, and they used the horses, mules, wagons, etc., together with the provisions and supplies belonging to the exemption, in the production of this crop. King's share of the crop was

some 44 bales of cotton, besides corn, potatoes, etc. Thirteen bales of the cotton were levied on by the executor and claimed by King as the proceeds of this exemption, for his wife, naming her, and for his several children, who were also named in the claim affidavit.

This crop was grown on a portion of the land bequeathed to him some ten years after he came into possession of it under the will of his mother. The plaintiff in execution tendered an equitable issue, in which he set up his right to all the crop made on the farm, except enough to compensate the family for the use of the property belonging to the exemption, and which contributed to its production, returning to it the provisions and supplies furnished for that purpose, with an addition of ten per cent.

On the trial of the case, the claimant joined issue on that plea, and the jury, under the instructions of the court, found thirteen bales of the cotton subject, holding, as we are authorized to infer, that the homestead estate received its compensation for what it contributed from the balance of the cotton, and from the corn, fodder, etc., which it was claimed was returned to it.

Three questions are made by the claimant in his motion for new trial: (1) that in these equitable proceedings the family, the wife and children of the claimant, were necessary parties; (2) that King, as the executor of his mother's will, had never assented to this bequest to himself, and therefore that the property on which this crop was made was still in the estate of the testatrix; (3) the third exception arises on this charge of the court: "Then see what would be a fair, just and equitable division between King and the homestead estate; see, if he got 20, 40 or 100 bales of cotton, what would be a fair, just and equitable division between him as head of a family, taking into consideration the worth of the mules, the per cent. on the corn, cotton-seed, and everything of that sort, how much would be left to him as an individual."

1. As to the first of these grounds, it is only necessary

to remark that King, as the head of his family, claimed this property as belonging to the exemption for the use of his wife and children, naming each and every one of them ; and we think the claim was thus properly made, and that he represented all of the others who had an interest in the exemption and the income arising from it, and that they were thus regularly made parties to the suit.

2. As to the second ground, viz. his assent to this legacy, little need be said. There is abundant evidence of acts from which an assent may be implied. He certainly assented directly to the bequest of those who took in remainder, and this assent could hardly be considered as effectual to vest the remainder interest in them, unless there had been also an assent to the legacy of the life-tenant. It is a familiar rule of law, that an assent to a legacy given to a life-tenant is also an assent to that of those taking in remainder.

3. The last ground is as to the equitable division that should be made between the homestead estate or exemption, and the claimant and the defendant in execution. It is insisted—and we think with propriety—that all that this plaintiff could recover was the value of the rent of the land on which the crop was made, and as there was no proof as to that, the verdict could not be sustained. What the cotton was worth, and the terms of the renting, what the hands who made it were to have and what the landlord, King, was to have, or rather what those services were worth, also the value of the services of the mules, what the custom was about furnishing provisions, the return of those provisions, etc., was proved.

We think, under the former decisions of this court, this fact should have been proved, and no more of the crop levied on was subject to the plaintiff's execution than would have been sufficient to satisfy and pay the rent.

In the case of *Wade vs. Weslow & Co.*, 62 *Ga.* 562, we held that investments of income go to enlarge the *corpus* of the estate which produced it. Where a homestead had

been set apart, and with the proceeds of produce made upon it, sheep had been purchased, the sheep were not subject to be seized and sold under execution against the debtor, the homestead not having terminated. Again, in *Kupferman vs. Buckholts*, 73 *Ga.* 778, it was held that, where the head of a family had an exemption set apart to him under section 2040 of the code, and subsequently rented land and used the property so exempted in making a crop, the crop thus made, after paying the rent, would not be subject to the prior debts of the head of the family, although there may have been an increase in the amount of such crop over the amount of the exemption used in making it, and although the debtor may have worked and managed for his family in making such increase.

It is supposed that another class of cases have some bearing upon the principle preannounced. We adhere to the principles ruled in the case of *Lathrop & Co. vs. Mc-Burney & Hollingsworth et al.*, 71 *Ga.* 815, and the case of *Oliver & Co. et al. vs. Victor & Co. et. al.*, 74 *Id.* 543; but there is no instance where those principles have ever been applied to proceeds made by the employment of homestead property, where the homestead had been taken upon the land of the debtor. There is no instance of any such apportionment as that, and there is quite a line of authorities on the subject. Besides, we believe it is an invariable principle that the debtor cannot be forced to apply his labor to the extinguishment of his creditor's claim. There is no way of reaching it.

For that reason, we think there was error in the instruction given by the court as to this apportionment, and this case is sent back, upon that ground alone, for another hearing.

Judgment reversed.

BLECKLEY, Chief Justice, concurring.

A homestead exemption estate is entitled to all the profits, including those produced by the labor of the head of

the family. It is also subject to all the losses of the farming enterprise. So there is no partnership in the matter. This investigation proceeded below on the theory that there was a sort of joint interest in the crops. It is a far better rule to hold, as we do, that in every case where exempted personalty is employed on land belonging to the the head of the family which is not homestead land, it is just the same as if some third person's land was rented by the homestead estate and farming operations conducted on it. In such case the crop would be liable to the landlord for a fair rental; and it would be first liable. All the rent should be collected out of the crop before the homestead estate gets anything; and this case lacks proof of what the rental value of the debtor's land was. This crop is subject to the extent of that value for the year; and if that had been ascertained to be so much cotton as was found subject by the jury, it would be a correct verdict; but there was no evidence to show what the rental value of the land was. I concur in the judgment.