## KISER & COMPANY v. DOZIER.

1. Property purchased by the head of a family and paid for exclusively with the income of the homestead may, for most purposes, be regarded and treated as an addition to the corpus of the homestead estate.

2. If, however, the head of a family purchases property and pays for the same partly with such income and partly with means derived from another and independent source, taking the title to himself individually, and afterwards conveying such property to himself as the head of his family, this property does not become an absolute addition to the homestead, nor does the latter conveyance operate to vest in the head of the family, as such, a legal title which will support an ordinary claim, unaided by equitable pleadings. Upon such pleadings, supported by evidence, there might be an equitable apportionment or partition of the newly acquired property, so as to add to the homestead what fairly belonged to it and leave the balance subject to levy and sale.

3. Where the main issue in a claim case was whether or not the property levied upon had been paid for exclusively with the rents, issues, and profits of a homestead, it was error to exclude notes and mortgages given to various persons by the head of the family, who was the claimant, these documents having some relevancy upon this issue and also tending to negative the claimant's testimony that the property in question had been paid for entirely with the income of the homestead.

4. One of the contentions of the plaintiffs in execution being that the claimant had, shortly before the rendition of the judgment they were seeking to enforce, conveyed the property in dispute to himself as the head of a family, with intent to hinder, delay and defraud creditors, it was, in view of all the evidence introduced at the trial, the duty of the court to submit to the jury the issue of fraud thus presented, and omitting to do so was erroneous. It was also, in this connection, erroneous to exclude evidence showing the value of the property conveyed by the claimant to himself as such head of a family.

Argued April 21, — Decided June 10, 1897.

Levy and claim. Before Judge Sheffield. Randolph superior court. May term, 1896.

An execution in favor of Kiser & Co. v. Dozier was levied, and he interposed a claim as head of a family, alleging that he held the property for them, the same having been pur-

chased with proceeds of homestead property. There was a verdict in his favor, and the plaintiffs' motion for a new trial was overruled.

The property levied on is lot of land 169 (202.5 acres) in Randolph county, conveyed to Dozier by Arthur Hood in 1887, and a storehouse and lot in the town of Coleman, conveyed to Dozier by Nichols in 1891. It appears that (in 1895 according to the brief of evidence; in 1875 according to the charge of the court) lots of land 133 and 134 in Randolph county valued at $1,400, and personalty of the value of $992, were set apart to Dozier as a homestead and exemption. On October 31, 1892, one week before the rendition of plaintiffs' judgment, Dozier executed to himself, as head of a family, a deed recorded exactly one month after its execution, reciting that he had had set apart to himself, as head of a family, a homestead for his wife and children, the proceeds of which he used in purchasing the property hereby conveyed, all of which was paid for out of the income or proceeds of the property so set apart. This deed conveys about 859 acres of land (lots 169, 135, 136, and parts of lots 132 and 171) in Randolph county, and several storehouses and dwelling-houses and lots (being five or more acres of land) in Coleman, including the property levied on. Dozier testified, that all of the property conveyed by this deed was bought and paid for by him with proceeds of his homestead property; he had no other means, and could not have paid for it in any other way. His family (wife and minor children) are still living. He has been farming for the past ten years and longer; first worked four mules up to 1887, and now has worked seven to eight mules, originally on homestead property, and then on other property bought with money made on the homestead. During 1890, 1891 and 1892, he carried on mercantile business in Coleman; did not think he made any money; failed in this business in the fall of 1892. The debt which was the foundation of plaintiffs' execution is one of the debts contracted in his mercantile business. (Plaintiffs' account was dated May 8, 1891, and suit upon it was filed in April, 1892.) He contracted other debts which he has not paid. During all this time he took deeds in

his own name until he conveyed the property to himself as head of a family. Lot 169 was bought for $450. The money was borrowed from McDonald to pay for it, and was repaid to McDonald in the fall of 1887. Dozier did not clear up and cultivate this lot for a year or two; it was all in the woods. He bought the other property levied on from Nichols for $1,250, which he thinks has all been paid; can not say that he has paid all the mortgage off, but no payment has since been demanded of him. He paid for this in part with money· raised from homestead property. $200 of consideration came from sale of cotton raised on the homestead; a small account against Nichols contracted in the mercantile business also went into this payment. Lots 135 and 136 were bought through and from Arthur Hood in October, 1883, and November, 1887, for $225 and $840 respectively. Dozier may have borrowed some of the purchase-money for the latter; if so, he repaid it that fall. He bought the east half of lot 171, in November, 1883, from Logan for $200, and 150 acres of lot 132, in December, 1884, from Parkerson for $760, or bought it from Brooks and got him to advance money for it and repaid him the next year. All these amounts were paid from proceeds of the homestead, but Dozier believed he got four bales of cotton worth $160 as rent for the portion of lot 132, before he paid anything on it. In January, 1888, he bought from Walton for $1,000 the residence in Coleman where he lived, including three acres of land, and this also was paid for with proceeds of the homestead property. During the years from 1882 he borrowed money freely in his own name on the property set out in the deeds conveying the same to him, giving mortgages on it, and using the money in his business, as he had good credit and could then get money at any time. (These deeds and mortgages were put in evidence by plaintiffs.) Dozier still owes McDonald something over $200 borrowed money; also some money to Arthur Hood; and some commercial debts, the amount of which he does not know, contracted prior to making the deed to himself as head of a family. Before this deed he borrowed from a loan company $1,600 which is not yet due, and which was used in his business. The other storehouse in

Coleman he built; sawed his own lumber, and supposes it cost him about $150.

There was testimony for plaintiffs, that at the time they extended credit they had no notice or knowledge of any homestead of Dozier. Before extending credit they conferred with Hood, who told them of land which Dozier owned, especially of lots 169, 135 and 136, which Hood had sold to Dozier individually, and which were valuable. It was on the faith of Hood's statement that plaintiffs shipped the goods to Dozier.

The motion for new trial alleges that the verdict is contrary to law and evidence; and that the court erred in rejecting as irrelevant a number of notes and mortgages from Dozier to McDonald, Hood and others, all but the last of which contained a covenant or guarantee that the property so mortgaged belonged absolutely to Dozier and was unencumbered, except in some instances for balance of purchase-money, and that there were no other claims or demands against it; viz.: May 16, 1889, for $331, on lot 135 and three mules. January 7, 1888, for $501, on lot 135, the east half of lot 171, and eight mules. December 10, 1885, for $575, on lot 135 and 150 acres of lot 132. January 20, 1887, for $304.75, on five mules, to secure the purchase-money of two of them. February 10, 1887, for $226, on the east half of lot 171. March 24, 1887, for $507.25, on lots 169 and 135. December 7, 1887, for $457-.20, on lots 135 and 132, except 50 acres. January 10, 1885, for $226, on east half of lot 171. February 24, 1886, for $152, on a mule, being the purchase-money thereof. May 10, 1890, for $561, on lots 132 and 135. March 30, 1892, for $235.45, on two storehouses and lots in Coleman. March 13, 1891, for $551, on lot 179 and two mules. All of the foregoing except those of December 7, 1887, March 30, 1892, and March 13, 1891, are marked paid, or settled, or canceled.

It is further complained that the court, upon objection that such evidence was irrelevant, refused to allow plaintiffs to prove by Dozier the value of the property conveyed by the deed from himself to himself as head of a family, at the date the deed was executed.

Also, that the charge of the court does not cover the issues

in the case; and that the court failed to charge on, but excluded from the jury all question or consideration of, the issue of fraud made by plaintiffs, who insisted that the deed made by Dozier to himself was made to defraud, hinder and delay his creditors.

Also, that the court erred in the following charges:

"If the claimant has shown you that in 1875 he applied for and had set apart to him for his family a homestead, that the family is still in existence, the wife still being in life, and some children born unto them before or after the homestead are minors depending on said head of a family for a support; and if he has further shown you that the property levied on in this case was paid for, either directly or indirectly, with money or property which was the produce or profits of said original homestead, then it would be your duty to find the property not subject.

"It makes no difference in this case whether the plaintiffs credited Dozier on the faith of this property. That can not affect the question as to whether it was paid for with the produce, profits or proceeds of the homestead or not."

Also, that the court erred in refusing a request to charge: "If you believe that plaintiffs credited the defendant in fi. fa. upon the faith of any portion of the property levied on, and that Dozier had in his own name the title to the same, and that he made a deed to himself as the head of a family pending suit of plaintiffs upon which judgment was obtained in this case and a short time before this judgment was rendered, said property would be subject, and your verdict should specify which is so subject."

Also, that the court failed to instruct the jury that if the evidence showed any part of the property so deeded by Dozier to himself as head of a family and any part of property levied on was not paid for with proceeds of homestead, they should find what part was not so paid for and find such part subject.

*W. D. Kiddoo* and *Hood & Moye*, by *Harrison & Bryan*, for plaintiffs.

*J. H. Guerry* and *W. C. Worrill*, contra.

FISH, J.   1. It has been held by this court, and we think correctly, that investments of the income derived from property which has been set apart as a homestead go to enlarge the corpus of the estate which produced it.   *Wade* v. *Weslow & Co.*, 62 *Ga.* 562; *Johnson* v. *Franklin & Whitney*, 63 *Ga.* 378.   This is true although the head of the family may have contributed his labor in managing the homestead estate, and thus materially increased the amount of income which would otherwise have been realized.   *Kupferman* v. *Buckholts*, 73 *Ga.* 778.   For a "debtor can not be forced to apply his labor to the extinguishment of his creditor's claim." *King* v. *Skellie*, 79 *Ga.* 151.   It follows that a creditor can not subject to the payment of a debt due by his debtor property which the latter, as the legal representative of the beneficiaries of a homestead estate, has purchased and paid for exclusively with income derived therefrom.

2. Of course, a mere pretense that a fund coming into the hands of the debtor was derived, as income, from his management of the exempted property, will not suffice to defeat the rights of creditors.   *Staples* v. *Keister*, 81 *Ga.* 772.   Nor will property be wholly exempt when purchased by the head of a family, when it appears that it was paid for by him partly with income yielded by the homestead estate and partly with means derived from another and independent source.   *Vining* v. *Officers of Court*, 82 *Ga.* 222.   Where, therefore, the title to property thus purchased is taken by the debtor in his individual capacity, a subsequent conveyance to himself as the head of his family will not operate to vest in him, as such, a legal title to the property, which will support an ordinary claim, unaided by equitable pleadings, based upon the ground that such property thus became an absolute . addition to the homestead estate.   On the contrary, no greater interest therein than that which the beneficiaries of the homestead could equitably assert would pass, in any event, as against creditors; and it would seem, in the absence of equitable pleadings setting up the rights of such beneficiaries, the head of the family could not successfully resist an effort on the part of creditors to subject the property to the payment of claims held against him indi-

vidually. In this connection, see: *Morris* v. *Tennent,* 56 *Ga.* 577; *Kupferman* v. *Buckholts,* 73 *Ga.* 778, 781; *King* v. *Skellie,* 79 *Ga.* 147; *Vining* v. *Officers of Court,* 82 *Ga.* 223. In the present case no pleadings of the nature above indicated were filed, praying that there might be an equitable apportionment or partition of the property which was the subject-matter of dispute, so as to add to the homestead what fairly belonged to it, leaving the balance subject to levy and sale. The presiding judge was not, therefore, called upon to instruct the jury as to the law relating to this subject, nor is it incumbent upon us to say more in regard thereto. As this case must undergo another investigation, it is still possible for the pleadings to be so amended as to properly present the issue in question; and doubtless, if this is done and the case is tried in the light of the law as herein announced, exact justice as between the respective parties will result.

3. The main contention of the plaintiffs in the court below was, that the property levied upon had not (as was insisted by the claimant and as was testified to by him) been paid for exclusively with the rents, issues and profits arising from the homestead estate. In this connection, certain notes and mortgages executed by him, purporting to evidence transactions had with various persons in his individual capacity regarding property which he testified had been paid for entirely out of assets belonging to the homestead estate, were offered in evidence by the plaintiffs, but were excluded by the court. We think error was committed in rejecting these documents. Not only were they admissible as having some evidentiary value of their own concerning the question at issue, upon the idea that they constituted admissions against interest, but they bore directly against the credit of the claimant, who testified as a witness in his own behalf, and thus tended to cast suspicion upon and discount his testimony as to other matters.

4. It was strenuously insisted by counsel at the trial, that the conveyance executed by the claimant to himself as the head of a family, and which was made but a short time before the rendition against him individually of the judgment the plaintiffs were seeking to enforce, was illegal and void be-

cause made with intent to hinder, delay and defraud creditors. The court did not, however, present this contention to the jury. In view of all the evidence introduced at the trial, this became a vital issue in the case, and it was the duty of the court to have instructed the jury as to the law relating thereto, notwithstanding no written request to charge thereon was presented by counsel for the plaintiffs. Furthermore, we rule, in this connection, that the court committed error in not permitting plaintiffs to introduce evidence as to the value of the property which was included in the conveyance just mentioned. Having raised the issue of fraud, they were entitled to have this transaction closely scrutinized by the jury; and to that end it was their right to demonstrate by competent evidence, if they could, that the value of this property was out of all proportion to any amount which could possibly have arisen as rents, issues and profits of the homestead estate during the period within which it was asserted by the claimant he had realized from that source the funds with which the property conveyed was purchased.

On the whole, we feel that the plaintiffs were not afforded a full and fair opportunity to have the merits of their side of the controversy duly weighed and passed upon by the jury, and that justice demands that they should be awarded a new trial. *Judgment reversed. All the Justices concurring.*