## CULVER *et al. v.* TAPPAN & MERRITT.

In order to maintain a claim to chattels which is founded solely on the contention that they are the product or increment of duly exempted personalty, it is incumbent upon the claimant to prove affirmatively that the subject-matter of the claim was obtained in exchange for exempted property or the proceeds thereof, or by labor exerted in connection with the use or consumption of such property, so that the newly acquired personalty could with fairness and reason be said to take the place of that which had been set apart.

The evidence for the claimant in the present case did not meet the requirements of the rule above announced.

Submitted May 3, — Decided May 22, 1901.

Levy and claim. Before Judge Hart. Greene superior court. September 15, 1900.

Personalty in the possession of Culver was seized by virtue of bail process in trover, as his property, and a claim to it as homestead property was interposed in behalf of his wife and children as beneficiaries of the homestead. The property in dispute included "one black mule Jim, one buggy and harness, one white and yellow cow Dinah," and "one two-horse wagon." The trial resulted in a verdict that the property was subject, except the wagon. A motion for a new trial, made by the claimants and based on the grounds that the verdict was contrary to law and the evidence, was overruled, and the movants excepted. From the evidence it appeared that on January 21, 1895, Culver executed to the plaintiffs a note and, as security for its payment, a bill of sale to certain personalty, including the property above mentioned, and that the note was given in settlement of a "guano note" and of two accounts, of which one was for supplies which had been furnished to him to run a farm, and the other an account against a third person. One of the plaintiffs testified that the credit was extended to Culver, and that some of the goods must have been sold to him on the day on which the note was given, but he did not remember as to that, and would not swear to it. It appeared that in 1884 certain personalty was set apart as homestead property to Culver, as the head of a family, but that none of the property in dispute was included in it, except the wagon which the jury found not subject; and that in 1890 the homestead was supplemented; but the evidence is contradictory as to whether all the property found subject was in-

cluded in the supplemental exemption. The brief of evidence shows that there was introduced in evidence a certified copy of the record of the latter proceeding, showing the setting apart of what the brief of evidence describes as "personal property including that levied on;" and the wife testified that "the property levied on is included in that homestead;" but both she and her husband afterwards testified that the mule and the buggy and harness were bought subsequently. He testified: "I bought the black mule Jim along in the fall of '95. . . The buggy and harness was bought in '92 or '93. I took a homestead in '84 for my wife and children. I managed for them from then on as agent. I had all this property before I gave a claim on it. . . I came in possession of the mule named Jim in the year '94 or the fall of '95. The supplies were gotten before this paper here was given." The wife testified: "I got the black mule named Jim in 1894 from Mr. Rhodes. I don't know how much we paid for him. We bought the buggy and harness about 1892. I bought the buggy and harness myself in 1893. . . I paid . . $60 cash, I think, for the buggy and harness. Of course Mr. Culver helped me out in it. He acted as my agent in this instance. Mr. Culver took out the homestead . . for me. He managed everything for me. I paid one dollar for the cow named Dinah, when she was a calf. I have no separate property. All the property we have is homestead property. The mules . . credited on the note were also gotten by trading or working with the homestead property." She testified also that her husband had no other property, when the original homestead was set apart, than that included in it; that since that time he has used that property in his occupation, which has been farming; that the property levied on in the trover case, except the wagon, was gotten by him by farming with the homestead property; that it is the proceeds of or the result from working with the homestead property; and that in 1884 or 1885 he was engaged also in merchandising.

Samuel H. Sibley, for plaintiffs in error.
Park & Merritt, contra.

LUMPKIN, P. J. The only question with which we are called upon to deal in the present case is whether or not there was sufficient evidence to sustain the verdict of which the plaintiff in error made complaint in a motion for a new trial. The issue in contro-

versy was whether certain chattels were subject to seizure as the property of one Culver, or were exempt therefrom as the product or increment of exempted personalty. It was not contended by the claimant, Mrs. Culver, that the particular property in dispute was actually set apart and exempted, but her insistence was that this property was purchased with the proceeds of articles which had been exempted, or that it had come into the possession of Culver, the head of the family, as the result of his labor exerted in connection with the use and management of personalty so set apart. We are aware that this court has gone a considerable length in holding that property acquired by the head of a family in either of the ways above indicated should be treated as exempted property and therefore not liable to seizure under process against him. As instances in point, see *Wade* v. *Weslow*, 62 *Ga.* 562, and *Johnson* v. *Franklin*, 63 *Ga.* 378. Many others might be cited. In the present case, however, we are of the opinion, and so rule, that the claimant failed to bring her case within the principle for which she contended. It was incumbent upon her to show affirmatively that the articles in question were obtained in one or the other of the manners stated. This the evidence offered in her behalf signally failed to do. It did not clearly appear either that any exempted personalty was exchanged for, or the proceeds thereof used in purchasing, the property in controversy, or that it could in any fair sense be regarded as the fruits of labor exerted by the head of the family in the prosecution of which he was husbanding, using, or consuming the exempted property so as to produce profits which could be fairly regarded as standing in the place of personalty which had been set apart. We therefore hold that the trial judge did not err in refusing to set the verdict aside.

*Judgment affirmed. All the Justices concurring.*